**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MANOJ KUMAR ENAGANTI,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; JOSEPH B. EDLOW, in his official capacity as Director, U.S. Citizenship and Immigration Services; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendants. | Case No. 4:26-cv-01618 ZMB |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND STAY UNDER 5 U.S.C. § 705**

## INTRODUCTION

Plaintiff timely filed to renew his H-4 employment authorization 102 days before it expired. USCIS has not decided his application. On information and belief, that is because USCIS decides H-4 applications only with or after the principal's petition, and it has not decided his spouse's H-1B extension petition, which it converted to premium processing on August 10, 2026. His authorization lapsed on October 10, 2026, and he has lost his job as an associate attorney.

At the October 14, 2026 status conference, the Court asked Plaintiff to state precisely what he seeks and to brief, with separate authority, a preliminary injunction and a stay of DHS's newly issued Final Rule. Plaintiff seeks (1) a preliminary injunction on his unreasonable-delay claim, ordering USCIS to decide his applications within 15 days and preserving his employment authorization in the meantime (Part I); and (2) a stay under 5 U.S.C. § 705 of the Final Rule as applied to his pending application (Part II). The two requests rest on different claims and different

authority, and each stands on its own. Both are limited to Plaintiff. Part III explains why the Final Rule does not moot this case.

## BACKGROUND

The facts are set out in the First Amended Verified Complaint ("FAC") and Plaintiff's declarations. In brief: Spouse's employer filed a Form I-129 on June 15, 2026. Plaintiff filed his Form I-539 and Form I-765 on June 30, 2026, asked USCIS to decide them with the I-129, and completed biometrics on July 24, 2026 (FAC § IV.B). USCIS converted the I-129 to premium processing on August 10, 2026; the 15-business-day period ended on or about August 31, 2026. No filing has been decided, and USCIS has issued no request for evidence (*id.*). Plaintiff requested a congressional inquiry on October 1 and expedited processing on October 7 (FAC § IV.D; Second Decl. ¶¶ 6–7). His authorization lapsed on October 10; his employer had terminated him the day before (Second Decl. ¶¶ 2–4).

DHS's IFR, 90 Fed. Reg. 48799 (Oct. 30, 2025), eliminated the automatic extension that previously kept timely renewal applicants working while USCIS decided their applications. On October 14, 2026, DHS adopted the IFR without change in the Final Rule, 91 Fed. Reg. 65306 (Oct. 14, 2026), effective on publication (FAC § IV.E).

## ARGUMENT

### I. THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION ON PLAINTIFF'S UNREASONABLE-DELAY CLAIM.

#### A. Legal standard

The Court weighs "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see Winter v.*

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The test is flexible: "[a]t base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* at 113. Likelihood of success on the merits is the most significant factor. *Sleep Number Corp. v. Young*, 33 F.4th 1012, 1019 (8th Cir. 2022). Where the government is the opposing party, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The heightened "likely to prevail" standard of *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc), applies to injunctions against statutes and regulations produced by "presumptively reasoned democratic processes." It does not apply to a request that an agency decide an individual application, and Plaintiff meets it in any event. Because part of the requested relief is mandatory, Plaintiff acknowledges that the Court will scrutinize it closely. The relief sought here is nonetheless modest, because it directs only that USCIS adjudicate Plaintiff's applications, not that the agency reach any particular result.

**B. Plaintiff is likely to succeed on Count I.**

*1. The Court has jurisdiction.* Section 1252(a)(2)(B)(ii) bars review only of decisions or actions "the authority for which is specified under this subchapter to be in the discretion of" the agency. 8 U.S.C. § 1252(a)(2)(B)(ii). The Supreme Court has held "that the key words 'specified under this subchapter' refer to statutory, but not to regulatory, specifications," and it applies a "presumption favoring interpretations of statutes [to] allow judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (citation omitted).

Defendants may rely on *Thigulla v. Jaddou*, 94 F.4th 770 (8th Cir. 2024), which applied that bar to a delay claim involving adjustment-of-status applications. But *Thigulla* applied the same rule: Congress barred review "only when Congress itself set out the Attorney General's

discretionary authority in the statute." *Id.* at 774 (quoting *Kucana*, 558 U.S. at 247). Adjustment of status is governed by a statute that expressly commits it to agency discretion. H-4 employment authorization, by contrast, exists only by regulation. 8 C.F.R. §§ 214.2(h)(9)(iv), 274a.12(c)(26). No statute specifies that whether or when USCIS decides a (c)(26) application is discretionary, and under *Kucana* discretion conferred by regulation does not trigger the bar.

Even if the Court were to conclude that Plaintiff's Form I-539, an extension of stay under 8 U.S.C. § 1184(a), falls within the bar, it may still compel adjudication of his Form I-765.

*2. USCIS has a discrete duty to decide.* Section 706(1) permits a court to compel "discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The APA requires an agency to "proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). USCIS's regulations contemplate the adjudication of properly filed employment-authorization applications. *See* 8 C.F.R. § 103.2(b)(19). Its discretion goes to the outcome, not to whether it decides.

*3. The delay is unreasonable under TRAC.* Courts assess delay under *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). The factors favor Plaintiff.

(a) Rule of reason and timetable (factors 1–2). A fixed timetable governs the very petition with which Plaintiff's applications are linked. When premium processing is requested, USCIS "will issue an approval notice, denial notice, a notice of intent to deny, or a request for evidence" within the applicable period, which for Spouse's petition is 15 business days. 8 C.F.R. § 106.4(e), (f)(1); *see* 8 U.S.C. § 1356(u). That period expired on or about August 31, 2026, with no action. Plaintiff recognizes that USCIS may forgo action within that period, and retain the fee, if it "opens an investigation for fraud or misrepresentation relating to the immigration

benefit request." 8 C.F.R. § 106.4(f)(5). But that provision relieves USCIS only of the premium-processing deadline; it does not authorize indefinite inaction, and it reaches only an investigation relating to the particular request. Defendants have not stated that any such investigation was opened on Spouse's petition, much less on Plaintiff's own applications, and USCIS may withhold adjudication of a specific application for investigation only on the determination its regulations require. *See* Part I.B.3(b), *infra*; 8 C.F.R. § 103.2(b)(18). No rule of reason supports leaving Plaintiff's biometrics-complete applications undecided behind it. In declining to preserve extensions for dependents, DHS itself pointed to USCIS's "efforts to streamline and coordinate processing" of EADs "linked to other benefit requests," such as "principal nonimmigrant extensions," and to "the potential for expanded use of premium processing." 91 Fed. Reg. at 65335. Leaving a premium-processed principal petition and its linked H-4 applications undecided contradicts the very premise on which DHS ended the extension.

(b) *The Department of Labor's actions do not explain the delay.* Defendants' counsel suggested at the status conference that an investigation involving Spouse's employer has put processing on hold. The Government's own announcement defines the action. At the October 8, 2026 White House event, the Secretary of Labor suspended six outsourcing firms, including Spouse's employer, "from the Permanent Labor Certification Program," and explained: "We will not accept any new or process any pending permanent labor certification applications involving these companies." (FAC § IV.C; Ex. K at 11:20.) The Vice President likewise described a suspension of "the perm program," the path by which H-1B workers

"apply for permanent resident status." *Id.* No speaker announced any hold on USCIS adjudication of H-1B petitions or H-4 applications. The Department of Labor adjudicates PERM certifications and labor condition applications, not H-1B extension petitions or H-4 applications, and no DHS or USCIS announcement suspends those. That the PERM suspension rests on "ongoing criminal investigations" of the employer does not change its scope. The announcements also do not reach the filings here: Spouse's PERM and I-140 were approved years ago, and the labor condition application for her I-129 was certified before it was filed. And on the public record they cannot explain the delay: the premium-processing period on the I-129 expired before the earliest reported action involving the employer. If USCIS is nonetheless withholding adjudication, its regulation permits that only if USCIS determines both that "an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the benefit request," and that disclosing information to the applicant in connection with the adjudication "would prejudice the ongoing investigation." 8 C.F.R. § 103.2(b)(18). Defendants have identified no such determination as to Plaintiff's applications. An unannounced hold on filings associated with a third party is not a rule of reason for indefinite inaction on Plaintiff's own applications.

(c) *Human welfare and the interests prejudiced (factors 3 and 5).* The delay has cost Plaintiff his job and his entire income, and has interrupted his first year of law practice (Second Decl. ¶¶ 2–5). These are harms to livelihood and welfare, not merely economic regulation.

(d) *Competing priorities (factor 4)*. Plaintiff does not ask to jump a queue. The linked petition is one for which a premium fee was paid precisely to obtain a decision on a fixed clock. Ordering USCIS to decide applications already tied to it displaces no one.

(e) *Impropriety (factor 6)*. Plaintiff need not show bad faith.

Plaintiff does not ask the Court to order action on Spouse's petition or to direct any outcome. He asks that USCIS decide his own applications, sequencing its work however it must.

**C. Plaintiff is suffering irreparable harm.**

Plaintiff has lost his employment and his entire earned income (Second Decl. ¶¶ 2–5). That loss is unrecoverable: the APA waives sovereign immunity only for non-monetary relief, 5 U.S.C. § 702, so Plaintiff can never recover lost wages from Defendants. "The threat of unrecoverable economic loss . . . does qualify as irreparable harm." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (finding irreparable harm where petitioners "would not be able to bring a lawsuit to recover their undue economic losses" if the agency's rules were later overturned). A court addressing the same rule as applied to H-4 spouses reached the same conclusion: "In the APA context, economic harms may be irreparable because plaintiffs are otherwise unable to recover monetary damages." *Jane Doe 1 v. U.S. Dep't of Homeland Sec.*, No. 8:26-cv-00060, slip op. at 16 (C.D. Cal. Sept. 10, 2026), ECF No. 46 (quoting *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020)). Plaintiff cannot mitigate by working without authorization, which would risk his status. *Sampson v. Murray*, 415 U.S. 61 (1974), which held that a government employee's temporary loss of income ordinarily is not irreparable, rested on the availability of back pay and other remedies; Plaintiff has none.

The harm also extends beyond wages. As the *Jane Doe 1* court explained, "[t]he harm from the lapse in employment extends beyond the loss of wages. This lapse will prevent Plaintiffs from progressing in their careers and constrain their future earning potential. It may also signal to other employers that EAD holders present a risk of losing eligibility and inhibit Plaintiffs' future employability." *Id.* That is what happened here: Plaintiff's employer terminated him the day before the lapse, because of it (Second Decl. ¶ 3 & Att. 1). For a newly admitted attorney, the forced departure from practice is a loss of professional development and standing that no later order can restore. Nor does the termination make the harm past. Without authorization, Plaintiff cannot accept any employment or practice law in any capacity, and that harm continues each day the lapse lasts. Authorization would end it immediately.

**D. The equities and the public interest favor relief.**

An order that USCIS decide two applications imposes only the burden USCIS already owes. Preserving Plaintiff's employment authorization pending that decision imposes no monetary cost and no meaningful security risk: Plaintiff has been vetted repeatedly, his biometrics were collected on July 24, 2026, and DHS may continue to vet him through ATLAS and CIV (FAC § IV.E–F). "The public interest is served by compliance with the APA." *Jane Doe 1*, slip op. at 16.

**E. The scope of the injunction.**

Plaintiff asks the Court to (1) order USCIS to adjudicate his Forms I-539 and I-765 within 15 days, without directing the outcome; and (2) pending adjudication, preserve his employment authorization as it stood on June 30, 2026, when he timely filed, and direct USCIS to reflect it in its systems within five business days. The second component preserves the status quo, which is the purpose of a preliminary injunction under Federal Rule of Civil Procedure 65: the question is "whether the balance of equities so favors the movant that justice requires the court to intervene

to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The relevant status quo is the last uncontested status that preceded the controversy: Plaintiff's employment authorization as it stood when he timely filed his renewal. That authorization lapsed only because USCIS has not acted on applications it was required to decide; restoring it pending decision returns the parties to where they stood before the delay at issue began. The *Jane Doe 1* court granted comparable relief, allowing the government to comply by "providing EADs to Plaintiffs that are effective throughout the pendency of this case." *Jane Doe 1*, slip op. at 17.

Defendants may argue that, before the IFR, a (c)(26) automatic extension was available only to H-4 spouses "with an unexpired Form I-94 showing H-4 nonimmigrant status," 90 Fed. Reg. at 48804, and Plaintiff's I-94 date has passed. But Plaintiff's I-94 lapsed only because USCIS has not decided the timely filed I-129 and I-539 that would extend it. Defendants should not be permitted to rely on their own delay to defeat relief from that delay.

## II. THE COURT SHOULD STAY THE FINAL RULE AS APPLIED TO PLAINTIFF UNDER 5 U.S.C. § 705.

### A. Legal standard

Section 705 provides that, "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. Courts apply the same four factors that govern preliminary injunctions: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam); *see Nken*, 556 U.S. at 434. Although the Final Rule took effect on

publication, § 705 authorizes two distinct forms of relief: the Court may "postpone the effective date of an agency action" or "preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The second clause does not depend on whether the effective date has passed. Courts use § 705 to stay final rules pending judicial review "to the extent necessary to prevent irreparable injury." *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016) (quoting 5 U.S.C. § 705) (staying final rule pending review). Plaintiff seeks narrower relief: preservation of his own status as applied to him. A § 705 stay limited to Plaintiff is consistent with *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), which addressed universal injunctions and left open whether the APA authorizes vacatur of agency action. Plaintiff seeks no universal relief; he asks only that his own status be preserved.

**B. Plaintiff is likely to succeed on Count III.**

An agency acts arbitrarily and capriciously when it "entirely fail[s] to consider an important aspect of the problem" or offers an explanation that "runs counter to the evidence." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). When it changes course, it must "be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (cleaned up); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

*1. DHS's answer to the H-4 problem rests on a premise that fails.* DHS did not ignore H-4 spouses. Commenters told DHS that H-4 renewals are delayed by the processing of the principal's H-1B petition, and DHS acknowledged that "affected dependents and adjustment applicants may experience temporary lapses in employment authorization and associated impacts on income, benefits, and career continuity." 91 Fed. Reg. at 65335. But DHS's answer to that specific problem was that "many employment-based EADs are linked to other benefit requests (for example,

principal nonimmigrant extensions or adjustment applications)," that "USCIS is engaged in efforts to streamline and coordinate processing where operationally feasible," and that USCIS "will continue to explore process improvements," including "the potential for expanded use of premium processing." *Id*. That answer assumes coordinated, timely action on the linked petition. It says nothing about the H-4 spouse whose linked petition is premium-processed and still left undecided, as Plaintiff's is. An explanation that depends on an assumed safeguard, without addressing what happens when the safeguard fails, is not reasoned decision-making. *See State Farm*, 463 U.S. at 43. And DHS's general advice to file early, *see* 91 Fed. Reg. at 65310, cannot help an H-4 spouse whose application waits on someone else's petition: Plaintiff filed 102 days early and lapsed anyway.

*2. DHS's reliance analysis does not account for H-4 spouses' distinct position.* DHS states that it "specifically acknowledged and considered reliance interests that applicants could have engendered by the prior policy," 91 Fed. Reg. at 65315, and it weighed the lapses H-4 spouses would suffer. But its weighing treats every renewal applicant alike: "DHS is taking a uniform approach for all aliens by ending the practice of providing automatic extensions of employment authorization and/or EADs." *Id.* at 65321. DHS expressly "decline[d] to preserve automatic extensions of any length for any subset of renewal EAD applicants, including employment-based dependents," reasoning that carve-outs "would perpetuate the core concern that some aliens could continue employment authorization . . . without updated vetting and adjudication." *Id.* at 65335. It does not explain why applicants who cannot avoid a lapse by any diligence of their own, because their eligibility runs through another person's petition, should bear the same burden as applicants who control their own filing timeline.

*3. The vetting rationale does not fit Plaintiff's lapse.* DHS's stated purpose is to ensure that renewed authorization follows completed vetting. Its response to the continuous-vetting alternative, that ATLAS and CIV "do not obviate the need to complete appropriate vetting," 91 Fed. Reg. at 65317, does not explain why an applicant whose biometrics USCIS collected in July, and whose renewal is stalled for reasons unrelated to vetting, must lose authorization in the meantime. Plaintiff acknowledges that the Final Rule addresses these concerns at a general level and that the Court reviews DHS's weighing deferentially. He asks only for relief as to himself, where the rule's premise and its operation have come apart.

Plaintiff does not challenge the Final Rule on procedural grounds. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020).

**C. The remaining factors favor a stay.**

Defendants may argue that *Rounds* requires a heightened showing to stay a regulation. Plaintiff meets it: he has shown that he is likely to prevail on Count III. *Rounds*, 530 F.3d at 732.

Without a stay, the Final Rule will continue to deny Plaintiff any authorization while his timely application sits undecided, extending the loss of his livelihood and practice described in his declarations; those losses cannot be recovered from the United States, 5 U.S.C. § 702. A stay limited to one already-vetted applicant's pending Form I-765 does not impair DHS's ability to apply the Final Rule to anyone else, and the public interest favors agency action that considers the problems it creates. *See Nken*, 556 U.S. at 435.

**D. Relationship between the two forms of relief.**

The stay rests on Count III and § 705; the injunction rests on Count I and Rule 65. Each is independent. The Court may grant either without the other.

## III. THE FINAL RULE DOES NOT MOOT THIS CASE.

Defendants' counsel suggested at the status conference that the Final Rule moots this case. It does not. Count I challenges USCIS's delay in deciding Plaintiff's applications, which the Final Rule does not address. And the First Amended Complaint challenges the Final Rule itself (Count III), which remains in effect and continues to injure Plaintiff. Nor does an investigation involving Spouse's employer moot anything: it may bear on whether delay is reasonable, but it does not make relief impossible, and Plaintiff's applications remain pending and undecided. If USCIS were to deny the I-129, Plaintiff would promptly advise the Court; a hypothetical future denial does not moot a present claim. A case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party," and "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citations and internal quotation marks omitted). Plaintiff's interest here is not small: an order compelling a decision on his applications, and preserving his work authorization while they remain pending, would restore his ability to work.

## IV. SECURITY SHOULD BE WAIVED OR NOMINAL.

Rule 65(c) requires security "in an amount that the court considers proper," and the district court has "much discretion in setting bond," provided it makes "the necessary findings in support of its determinations." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991). Here, the requested relief poses no meaningful risk of monetary loss to Defendants. An order to adjudicate pending applications requires USCIS to do what the law already requires of it, using fees Plaintiff has already paid. Interim preservation of Plaintiff's work authorization and a party-specific stay impose no financial cost on the government. If the injunction were later found to have been wrongly issued, Defendants could not show damages flowing from it. Plaintiff therefore asks the

Court to find that Defendants face no material risk of financial harm and to waive security or, in the alternative, set a nominal bond of $100.

**CONCLUSION**

The Court should grant the motion and enter the proposed order.

Dated: October 16, 2026

Respectfully submitted,

/s/ Manoj Kumar Enaganti
Manoj Kumar Enaganti
Mo. Bar No. 78467
E.D. Mo. Bar No. 78467MO
Plaintiff, pro se
253 Montecito Terrace
St. Peters, Missouri 63304
(929) 270-6600
enagantilaw@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2026, I filed the foregoing through the Court's CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Manoj Kumar Enaganti